UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICK RICARDO SMITH,

                Petitioner,

-against-

ERIC SCHNEIDERMAN, Attorney General for the State of New York, and KATY POOLE, Administrator of Scotland Correctional Institution, North Carolina,

                Respondents.

No. 13 Civ. 8423 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Petitioner Patrick Smith, an inmate at the Scotland Correctional Institution in Laurinburg, North Carolina, proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his future custody for a conviction obtained by the State of New York. Pending before the Court is a Report and Recommendation ("R&R") issued by Magistrate Judge Judith C. McCarthy, as permitted by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), recommending that the petition be denied in its entirety. Petitioner filed timely objections to the R&R with the Court, which largely reiterate the arguments made to Judge McCarthy.

    For the following reasons, the Court adopts certain portions of the R&R, and the petition is DENIED in part, but the Court concludes it cannot be dismissed at this juncture.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/5/2017

Copies mailed/faxed 9/5/2017
Chambers of Nelson S. Román, U.S.D.J.

## BACKGROUND

The Court presumes familiarity with the factual and procedural background of this case, aptly summarized in Judge McCarthy's R&R.[1] Following Petitioner's state convictions, he timely filed the instant petition for a writ of habeas corpus on November 14, 2013 (ECF No. 1 ("Petition")), adopting certain arguments made in his counseled brief to the Appellate Division on direct appeal, as well as certain arguments contained in his *pro se* supplemental brief filed at that time. Specifically, Petitioner asserts that 1) he was denied his speedy trial right under the Interstate Agreement on Detainers, 2) the indictment was jurisdictionally defective, 3) the jury panel did not fairly represent a cross-section of the population, 4) the prosecutor was improperly allowed to cross-examine him about a previous robbery for which he was acquitted, 5) the trial court erred in refusing to uphold his *Batson* objections during jury selection, 6) he was denied his right of confrontation with respect to DNA evidence presented at trial, and 7) the trial court erred in sentencing him in the aggravating range due to his prior record. (*See generally id.*)

---

[1] As recommended by Magistrate Judge McCarthy, in light of Petitioner's *pro se* status, the Court will deem the petition asserted against the proper Respondents. *See Bell v. Ercole*, 631 F. Supp. 2d 406, 411 n.1 (S.D.N.Y. 2009); Fed. R. Civ. P. 21 ("on its own, the court may at any time, on just terms, add or drop a party"). Pursuant to the Rules Governing Section 2254 and Section 2255 Proceedings ("Habeas Rules"), Rule 2(b), when a petitioner is challenging a state court judgment that may subject him to "future custody," "the petition must name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered." *See* Habeas Rules, *available at* http://www.uscourts.gov/rules-policies/current-rules-practice-procedure (last visited Aug. 29, 2017); *see, e.g.*, *Rogers v. Attorney Gen. of Virginia*, No. 08 Civ. 14 (LMB) (BRP), 2008 WL 4829622, at *1 n.1 (E.D. Va. Nov. 4, 2008) (current custodian and the attorney general of the state where petitioner may be subject to future custody named as respondents); *Gibbs v. Koster*, No. 12 Civ. 1714 (ACL), 2015 WL 5157522, at *1 (E.D. Mo. Sept. 2, 2015) (similar but naming only the attorney general of the state where future custody was anticipated); *see also Hughes v. North Carolina*, No. 13 Civ. 51 (RJC), 2013 WL 1798405, at *2 (W.D.N.C. Apr. 29, 2013) (one of "the proper respondent[s] in this action is [the] current Administrator of Scotland Correctional Institution"); *New prison managers named in Scotland and Hyde counties* (Jan. 9, 2015), *available at* https://www.ncdps.gov/press-release/new-prison-managers-named-scotland-and-hyde-counties (last visited Aug. 29, 2017) (press release noting Katy Poole named administrator of Scotland Correctional Institution). The Court notes that the Attorney General of New York received a copy of Petitioner's habeas petition in 2014. (*See* ECF No. 4.) The District Attorney's Office for the City of White Plains has responded to and defended against the petition on behalf of the State of New York up to this point.

Accordingly, the Clerk of the Court is respectfully directed to amend the case caption as indicated in this Opinion and Order to substitute the following parties as Respondents: Eric Schneiderman, Attorney General for the State of New York, and Katy Poole, Administrator of Scotland Correctional Facility.

On January 9, 2017, Judge McCarthy issued her R&R recommending this Court deny the Petition, finding that most of Smith's claims are procedurally barred, and that, alternatively, none of his claims present grounds for relief from his conviction. (*See* R&R, ECF No. 38.) Petitioner, after requesting and receiving an extension from this Court, filed timely objections on March 30, 2017 (ECF No. 44 ("Objections")), generally reiterating the same arguments raised on appeal to the Appellate Division, raised in the petition presently before the Court, and raised in opposition to the motion to dismiss (ECF No. 10 ("Opp'n Mem.")) considered by Judge McCarthy.

## STANDARDS OF REVIEW

### I. Habeas Petition Seeking Review of a State Court Decision

"[A] federal court may grant habeas relief only when a state court's decision on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' decisions from th[e] [Supreme] Court, or was 'based on an unreasonable determination of the facts.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting 28 U.S.C. § 2254(d)); *see also White v. Wheeler*, 136 S. Ct. 456, 460 (2015) ("where, as here, the federal courts review a state-court ruling under the constraints imposed by [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)], the federal court must accord an additional and 'independent, high standard' of deference" to adjudications on the merits) (citation omitted). Any state court findings of fact are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[t]he prisoner bears the burden of rebutting the state court's factual findings"). Additionally, "[f]ederal habeas courts generally refuse to hear claims 'defaulted . . . in state court pursuant to an independent and adequate state procedural rule.'" *Johnson v. Lee*, 136 S. Ct. 1802, 1803-04 (2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

3

## II. Magistrate Judge's Report and Recommendation

A magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1)(B). In such a case, the designated magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings or recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

28 U.S.C. § 636(b); *accord* Fed. R. Civ. P. 72(b)(2), (3). Courts generally afford *pro se* litigants latitude and construe their papers "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nevertheless, a *pro se* party's objections must be "clearly aimed at particular findings in the magistrate's proposal" rather than a means to take a "'second bite at the apple' by simply relitigating a prior argument." *Singleton v. Davis*, No. 03 Civ. 1446, 2007 WL 152136, at *1 (S.D.N.Y. Jan. 18, 2007) (citation omitted).

It is within the Court's discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). In doing so, "[t]he district court 'may adopt those portions of the . . . report [and recommendation] to which no "specific written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.'" *Olivares v. Ercole*, 975 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (citations omitted). The clearly erroneous standard also applies when a party makes only conclusory objections, or simply reiterates his original arguments. *See Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009).

4

## DISCUSSION

Petitioner filed objections to every claim addressed in the R&R. Generally, under Section 636(b)(1), when written objections to a magistrate judge's report and recommendation are timely filed, the district court will make a *de novo* review "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "However, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review" of those recommendations. *Vega v. Artuz*, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citing *Vargas v. Keane*, No. 93 Civ. 7852 (MBM), 1994 WL 693885 (S.D.N.Y. Dec. 12, 1994)); *Klawitter v. Chater*, No. 93 Civ. 0054 (JTE) (CEH), 1995 WL 643367 at *1 (W.D.N.Y. Oct. 18, 1995).

Petitioner's objections to the R&R often simply reiterate his original arguments. (*Compare, e.g.*, Objections at 4 ("Petitioner hereby reiterates his contention that the indictment . . . is duplicitous on its face and tracks statutory language almost identically"), *with* Petition at 11 (raising the issue of whether the state courts erred "by allowing the case to be tried on an indictment that was constitutionally defective"), *and* Opp'n Mem. at 3 ("Petitioner contends that the indictment is defective, in that, it is a recital of statutory language and the he was prejudiced by its duplicitous effect").) While Petitioner makes facial attempts to object to Judge McCarthy's recommendations, (*see* Objections at 3), his objections are not aimed at any particular findings or recommendations in Judge McCarthy's R&R, and are simply a means to take a "second bite at the apple," restating the same arguments that were previously raised. Without any specific objections—*e.g.*, noting an area of law that Judge McCarthy misapplied or an incorrect factual finding, the Court need only review the R&R for clear error.

5

Nevertheless, even upon *de novo* review, most of Petitioner's federal claims, even liberally construed, are barred by procedural default; and, of those that are not barred, only one presents an issue warranting habeas review.

I.     **Procedurally Barred or Meritless Claims**

Judge McCarthy correctly found that Petitioner failed to raise his first (R&R at 23 (IAD)), third (*id.* at 26 (jury cross-section)), fourth (*id.* at 29-30 (prosecution's cross-examination)), and sixth (*id.* at 33-34 (DNA evidence)) claims at the trial court, meaning they were unpreserved for state appellate review "pursuant to an independent and adequate state procedural rule" and are procedurally barred from federal habeas review. *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (New York's contemporaneous objection rule is a "firmly established and regularly followed [] procedural rule" that "constitutes an independent and adequate state law ground for disposing of a claim"). Similarly, after liberally construing his three post-petition motions and determining Petitioner was attempting to raise an additional claim regarding alleged amendments to the indictment that were not the result of a "true bill returned by a grand jury," Judge McCarthy correctly determined that any such claim would be unexhausted. (R&R at 36-37.) And furthermore, as to his second claim, that the indictment against him was jurisdictionally defective, Judge McCarthy correctly stated the applicable law regarding a constitutionally sufficient indictment (R&R at 25) and found that the indictment here "sufficiently informed Petitioner of the charges against him" (*id.* at 26). Therefore, the Court agrees that his second claim is without merit. The Court adopts these portions of the R&R.

With regard to Petitioner's seventh claim, that the trial court erred in sentencing him in the aggravating range due to his prior record, Respondents correctly argued that Petitioner failed to raise the precise issue now pressed on habeas review to the New York appellate courts. On

6

direct appeal, he challenged his sentence as harsh and excessive but did not question the fingerprint records used to establish his alias and prior crimes "and, hence, enhance his sentence." (*See* Resp. Mem. at 32 & n.2, ECF No. 9.) Neither his counseled brief before the Appellate Division nor his *pro se* supplemental brief raised this particular claim. (*See* ECF No. 9, Ex. 8 at 62-64 (appellate brief), Ex. 10 (*pro se* supplemental brief)); *see People v. Smith*, 98 A.D.3d 533, 535 (2d Dep't 2012) (determining in Petitioner's case that the "sentence imposed was not excessive"). Therefore, "because raising the former does not present the state courts with essentially the same legal doctrine asserted in the habeas petition," this claim is unpreserved for habeas review and also procedurally defaulted. *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (citations and quotation marks omitted).

Petitioner has not proffered any cause[2] for the procedural defaults, and the record is devoid of evidence supporting innocence. As a result, the Court is precluded from considering these claims. *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748-49, *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2)).

## II. Petitioner's *Batson* Claims

This brings the Court to Petitioner's fifth claim, which asserts that the trial court erred in refusing to uphold his *Batson* objections to the peremptory strikes used against two potential jurors during the jury selection for his trial. Judge McCarthy carefully considered both potential

---

[2] The Court notes that Petitioner has not yet raised the issue of ineffective assistance of counsel with the state courts in a collateral review proceeding, *i.e.* pursuant to N.Y. C.P.L. § 440.10, which can in some circumstances demonstrate cause for a procedural default. *People v. Smith*, 98 A.D.3d 533, 535 (2d Dep't 2012) (Petitioner's "contention, raised in his *pro se* supplemental brief, that he was deprived of the effective assistance of counsel, is based on matter dehors the record, and cannot be reviewed on direct appeal"); *see Dixon v. McGinnis*, 492 F. Supp. 2d 343, 352 (S.D.N.Y. 2007) (until raised, such ineffectiveness cannot be deemed exhausted and, therefore, cannot serve as cause for a procedural default); *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013); *Martinez v. Ryan*, 566 U.S. 1, 14 (2012); *but see Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (declining "to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim").

7

jurors that were challenged and the reasons given for striking them. (R&R at 32-33.) While the Court agrees with Judge McCarthy and adopts her conclusion that Petitioner failed to present a reviewable *Batson* claim with regard to the state courts' handling of his challenge to the strike of the first juror, Mr. Chisholm, (R&R at 10, 30-33),[3] the Court must disagree with her ultimate conclusion regarding the strike of the second, Ms. Jackson (*see id.* at 33 (finding that the "state court accepted the[] [prosecution's] race-neutral explanations for Ms. Jackson's dismissal")).

### A. The Inquiry Required by *Batson v. Kentucky*

"In *Batson*, the Supreme Court established 'a three-step burden-shifting framework for the evidentiary inquiry into whether a peremptory challenge is race-based.'" *Carmichael v. Chappius*, 848 F.3d 536, 545 (2d Cir. 2017) (quoting *McKinney v. Artuz*, 326 F.3d 87, 97 (2d Cir. 2003)). Though the ultimate burden of persuasion rests with the party objecting to the peremptory challenge, the responsibilities of the parties shift back-and-forth as follows:

> In the first step, the objecting party must set forth a prima facie showing "that the circumstances give rise to an inference that a member of the venire was struck because of his or her race." [At the second,] [i]f the objecting party makes the requisite showing, "the burden shifts to the [party striking the potential juror] to come forward with a neutral explanation" for its peremptory challenge. Finally, [at the third step,] if the party striking the juror tenders a "neutral explanation," the trial court has "the duty to determine if the [objecting party] has established purposeful discrimination."

*Id.* at 545 (citations omitted); *see also Galarza v. Keane*, 252 F.3d 630, 636 (2d Cir. 2001). As the Second Circuit has repeatedly held: "[T]he third step of the *Batson* inquiry *requires* a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the

---

[3] It was not unreasonable for the trial court or the Appellate Division to conclude Petitioner "failed to meet his burden" at step one of *Batson*. *People v. Smith*, 98 A.D.3d 533, 534 (2d Dep't 2012) (citing *Batson*).

8

facts and circumstances." *Dolphy v. Mantello*, 552 F.3d 236, 239 (2d Cir. 2009) (quoting *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000)) (emphasis added).

### B. The Handling of the *Batson* Steps—Particularly the Third Step—by the State Courts in Petitioner's Case

Defense counsel challenged the prosecution's decision to strike Ms. Jackson from the jury on the basis that all three of the African-American jurors presented for empaneling up to that point had been dismissed. Defense counsel acknowledged that the second African-American juror was dismissed for cause on a defense motion, but justified that decision based on that juror's "close relationship" with the owner of the jewelry store that was robbed. (Tr. 524.) Thus, defense counsel argued that the third and final peremptory challenge asserted by the prosecution against the last potential African-American juror was impermissibly based on race. (Tr. 524-25.) The trial court, apparently satisfied that defense counsel had made a prima facie showing, turned to the prosecution for a race-neutral explanation. (Tr. 525.) The justification offered by the prosecutor was that Ms. Jackson was lacking in "life experience." (Tr. 525-27.) After that justification was provided, the Court conclusorily stated: "I've heard enough. I'll permit the [peremptory] challenge over defendant's objection." (Tr. 527.)

On direct appeal, the Appellate Division held that the "[t]he County Court [] properly denied [Petitioner's] second *Batson* challenge." *Smith*, 98 A.D.3d at 534. Its one-sentence analysis concluded that the trial court's "*determination* that the prosecutor's race-neutral explanation for excluding [Ms. Jackson,] a prospective African–American juror[,] was nonpretextual is entitled to deference on appeal and should not be disturbed where, as here, it is supported by the record." *Id.* (citations omitted and emphasis added). Defense counsel thoroughly presented this issue to the Court of Appeals, which denied leave to appeal. (*See* ECF No. 9 Ex. 13 (leave letters)); *People v. Smith*, 20 N.Y.3d 989 (2012) (denying leave to appeal).

9

## C. Habeas Review

In the usual case, "a federal habeas court c[ould] only grant [the] petition [on this ground] if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice v. Collins*, 546 U.S. 333, 338 (2006); *Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) ("*Batson's* third step . . . turns on factual determinations, and, 'in the absence of exceptional circumstances,' we defer to state court factual findings unless we conclude that they are clearly erroneous.");[4] *see Isaac v. Brown*, 205 F. App'x 873, 876-77 (2d Cir. 2006) ("not objectively unreasonable to interpret the trial court's words as crediting the race-neutrality of the prosecutor's reason for the challenge," where trial judge said, "As far as I am concerned there is no basis for that. There are black jurors on the jury, and I think there is adequate cause for the People to raise the challenge."); *see also Batson*, 476 U.S. at 98 n.21 ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."). Here, however, apparent from the record, the trial court's ruling was made without particularly elaborate "inquiry or finding, as though the ground for [allowing] the strike was self-evident." *Dolphy*, 552 F.3d at 239. The critical issue presented by Petitioner's claim, therefore, is whether an actual determination or credibility finding was actually made as part of the third step of *Batson* for this Court to review. *Cf. Rice*, 546 U.S. at 336-37 (trial court explicitly stated it would "give the District Attorney the benefit of the doubt" where the race-neutral reason offered was the same reason used to dismiss other prospective jurors).

---

[4] In contrast, "[o]n direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Hernandez v. New York*, 500 U.S. 352, 364-66 (1991)).

#### a. Was there an adjudication on the merits?

Failure to make the requisite determination at the third step of *Batson* is considered error in this circuit. *See Carmichael*, 848 F.3d at 545 ("the trial court has 'the duty to determine if the [objecting party] has established purposeful discrimination'"); *Jordan*, 206 F.3d at 200 (it is "error for [a] trial court to deny a *Batson* motion without explicitly adjudicating the credibility of the non-moving or challenging party's race neutral explanations for its action in peremptorily striking potential jurors").[5] While there is some confusion surrounding the exact phrasing a trial judge must use to "explicitly adjudicate[e] the credibility of the non-moving [] party's" explanation provided at *Batson's* second step, stemming in no small part from the circuit's holding in *Messiah v. Duncan*, 435 F.3d 186 (2d Cir. 2006), that confusion is largely clarified by the circuit's holding in *Dolphy v. Mantello*, 552 F.3d 236 (2d Cir. 2009).

In *Messiah*, the majority of the panel concluded that "it [was] plain from the record that the trial judge rendered a ruling after considering the *Batson* challenge." *Messiah*, 435 F.3d at 199. The trial judge in that case "ruled by clearly accepting the [peremptory] strike of [the juror] after listening to the relevant arguments" made by both sides. *Id.* at 200. The majority emphasized that a "trial court is not compelled to make *intricate* factual findings in connection with its ruling in order to comply with *Batson*." *Id.* at 198 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003)) (emphasis added). Thus, the majority held that "as long as each side to a *Batson* dispute is provided an opportunity to make its record, a clear expression of the trial court's acceptance or rejection of a peremptory strike is an adequate adjudication of the merits of the *Batson* claim." *Id.* at 201-02. It distinguished, therefore, the trial judge's initial statement to

---

[5] Other circuits have noted the "presence of a circuit split regarding whether a trial judge must make explicit findings of fact at *Batson's* third step." *Higgins v. Cain*, 720 F.3d 255, 268 (5th Cir. 2013). The Second Circuit, however, requires some determination be made. *See Carmichael v. Chappius*, 848 F.3d 536, 545 (2d Cir. 2017); *Dolphy v. Mantello*, 552 F.3d 236, 239 (2d Cir. 2009); *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000).

11

defense counsel to "stop that nonsense" as "clear[ly] . . . not actually intended to adjudicate the *Batson* claim." *Id.* at 199 (emphasis added).

Judge Jacobs, concurring with the majority for other reasons, explained that he did not agree that simple acceptance of a peremptory strike could evince an adequate adjudication. In his concurrence, he explained that circuit precedent accepting the *rejection* of a peremptory challenge as an adjudication of a *Batson* claim was distinguishable from the situation in *Messiah*. "[S]ince the default outcome of a peremptory strike is that the juror is excused rather than seated, there [is] no question that [a] trial judge ha[s] conducted and completed the required step-three *Batson* analysis," when the judge ultimately decides to seat the juror. *Id.* at 203 (Jacobs, J., concurring); *see McKinney*, 326 F.3d at 99-100 ("[b]y saying that it saw no reason for the juror not to be seated, the court was saying that it found the defense's reason to be pretextual"). "By contrast, when a trial judge acknowledges that a struck juror is gone,"—or simply allows the peremptory strike—"that observation [or acquiescence] is equally consistent with (i) a *Batson* step-three determination on the merits *or* (ii) a failure to consider the *Batson* motion." *Id.* (emphasis added). In short, his concurrence argued that accepting a peremptory strike does not necessarily imply the required credibility determination was made.

Judge Jacobs well-reasoned understanding of the third step of *Batson*, explained in his *Messiah* concurrence, was ultimately adopted by the Second Circuit in *Dolphy*. There, at the second step of Batson, the "prosecutor said he struck [a] juror because of 'her appearance,'" explaining: "I do not select overweight people on the jury panel for reasons that, based on my reading and past experience, that heavy-set people tend to be very sympathetic toward any defendant." *Dolphy*, 552 F.3d at 237. The trial court inquired further, asking "whether the prosecutor was 'saying that race had nothing to do with it,' and the prosecutor responded 'that's

12

correct.'" *Id.* The trial court then initially ruled, stating: "Very well. Strike will stand." *Id.* The defense counsel renewed the objection by countering that the same prosecutor had "allowed overweight people on juries in other cases." *Id.* The trial court then reiterated its ruling: "[T]hat's neither here nor there. I'm satisfied that is a race neutral explanation, so the strike stands." *Id.* Again, recognizing that "[t]rial courts applying the third *Batson* prong need not recite a particular formula of words, or mantra," and the *Messiah* holding that "[a]n 'unambiguous rejection of a *Batson* challenge will demonstrate with sufficient clarity that a trial court deems the movant to have failed to carry his burden to show that the prosecutor's proffered race-neutral explanation is pretextual,'" the panel in *Dolphy* concluded that neither of the trial judge's acceptances of the peremptory challenge were sufficient. *Id.* at 239. The *Dolphy* court noted that "the judge's words seemed to assume that a race-neutral explanation (*Batson* step two) was decisive and sufficient." *Id.* at 239. Such a tacit assumption or acceptance of the proffered explanation was insufficient to discharge the trial judge's duty at the third step of *Batson*. *Id.*

In this case, after the justification that Ms. Jackson lacked life experience was provided, and defense counsel argued that the juror had unequivocally expressed her ability to make hard decisions, the trial court stated: "I've heard enough. I'll permit the [peremptory] challenge over defendant's objection." (Tr. 527.) Simply permitting the peremptory is, as explained in *Dolphy*, not enough. *Cf., e.g.*, *DeVorce v. Philips*, 603 F. App'x 45, 47 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1206 (2016) (trial judge discussed one of the race-neutral proffers by the prosecution, calling it the "reason" for the strike, and then denied *Batson* challenge); *Hicks v. Ercole*, No. 09 Civ. 2531 (AJN), 2015 WL 1266800, at *18 (S.D.N.Y. Mar. 18, 2015) ("The trial judge . . . did not make such a mistake—he explicitly concluded that, with respect to all of the challenged jurors, the prosecution's reasons were credible.").

This Court discerns no difference between letting a strike stand and permitting a challenge over objection. *See Galarza*, 252 F.3d at 644 (finding error at third step of *Batson* and noting it "may well have been a different case if the trial court's review of [the defense's] *Batson* challenges culminated in a general crediting of the prosecutor's race-neutral explanations"). Just as the trial court in *Dolphy* failed to express whether it found the race-neutral reasoning to be non-pretextual and thus a permissible ground for exercising a peremptory challenge, the trial judge in Petitioner's case had "heard enough" and simply "permit[ted]" the strike. *See, e.g.*, *United States v. Bontzolakes*, 536 F. App'x 41, 44 (2d Cir. 2013) ("the District Court's terse acceptances of the government's sex-neutral justifications left unclear whether it actually performed the determination required at the third step of *Batson*"); *Chan Young Bak v. Metro-N. R.R. Co.*, 650 F. App'x 63, 66 (2d Cir. 2016) (in a civil case, "the court did not expressly rule on whether it found th[e] [proffered] explanation credible in the circumstances presented").

No cases since *Dolphy* have cabined or abrogated its holding, and this Court is bound to follow it, leading the Court to conclude that the trial judge failed to make the requisite credibility determinations in order to resolve Petitioner's *Batson* challenge.

### b. How does the lack of adjudication impact a habeas court's review?

"Because the trial court failed to assess the credibility of the prosecution's explanation, it follows that there was no adjudication of [Petitioner's] *Batson* claim on the merits [at that level], and . . . the [] [C]ourt [need not] defer to the trial court under AEDPA." *Dolphy*, 552 F.3d at 239-40. In the same vein, because there was no determination by the trial court, the Appellate Division decision affording the conclusory decision deference is also not entitled to AEDPA deference. *Id.* at 238 (in *Dolphy*, no deference given where "the Appellate Division concluded that the prosecution had presented a race-neutral explanation for the strike and that defendant's

14

'bald contention that the explanation was pretextual' did not merit reversing the conviction"); *see also People v. Dolphy*, 257 A.D.2d 681, 683 (3d Dep't 1999) (concluding, despite the lack of an actual credibility determination, that "the prosecutor met his burden by coming forward with a racially neutral explanation which was given credence by County Court"). If the credibility determination had been made, even hastily, then the AEDPA standard of review would apply to that determination and a subsequent affirmance by the state's appellate courts. *See Foster*, 136 S. Ct. at 1746 (state habeas court evaluated original record and concluded *Batson* claim was "without merit"); *Carmichael*, 848 F.3d at 546 ("Appellate Division considered [petitioner's] *Batson* challenge on the merits and affirmed the trial court's [reasoned] denial," thus AEDPA deference afforded to state appellate court's decision); *McKinney*, 326 F.3d at 101 (same); *Harris v. Kuhlmann*, 346 F.3d 330, 344-45 (2d Cir. 2003) (where state trial court failed to conduct *Batson's* second and third steps, but Appellate Division affirmed conviction, question on federal habeas review was "whether it was 'objectively unreasonable' for the Appellate Division to determine that [the petitioner] failed to make a prima facie showing of race-based purpose before the state trial court" at *Batson's* first step—the only determination which could be reviewed on the record).

The Court recognizes that there is, at first glance, a tension between the standard of review employed in *Dolphy* and the Second Circuit's long-standing assumption that a reasoned decision entitled to deference underlies terse phrases such as "meritless" or "without merit" when they are used by the state's appellate courts to describe particular claims. *See Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir.), *cert. denied*, 136 S. Ct. 337, 193 L. Ed. 2d 243 (2015) ("In *Zarvela v. Artuz*, [364 F.3d 415, 417 (2d Cir. 2004),] [the circuit] treated as an adjudication on the merits a State court decision that determined 'petitioner's claim to be unpreserved, and, in

any event, without merit.'"); *Carmichael v. Chappius*, 182 F. Supp. 3d 74, 86 (S.D.N.Y. 2016), *vacated on other grounds*, 848 F.3d 536 (2d Cir. 2017) ("th[e] Court must presume that the Appellate Division applied the correct legal standard as it evaluated [the] *Batson* claim"); *cf. DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005) ("Because the Appellate Division [gave no] expla[nation for] its basis for affirming the trial court on the *Batson* claims, we cannot conclude that it adjudicated those claims on the merits."). But ultimately the difference between an adjudication on the merits summarized by the description "meritless" and an appellate court's provision of deference to a determination *that did not take place* is considerable.

Therefore, this Court, bound by and agreeing with *Dolphy*, cannot afford AEDPA deference to the absent determination by the trial court or the affirmance of that illusory determination. *Cf. Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

### c. Proceeding in this Court in light of the *Batson* Error

"It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett v. Elem*, 514 U.S. 765, 768 (1995); *see Foster*, 136 S. Ct. at 1752 (explaining why a "comparison between [jurors] is particularly salient" when considering the prosecution's treatment of one juror versus another).[6]

---

[6] The ages of other challenged and non-challenged jurors will be of particular relevancy. *See, e.g.*, *People v. Burroughs*, 295 A.D.2d 959 (4th Dep't 2002) (explaining that "while age is, facially, a race-neutral reason for a peremptory challenge to a juror, an explanation based upon age can become pretextual if it bears no relationship to the facts of the case, or if other jurors of a similar age are not objected to on that ground," and concluding it was pretext in a case involving a 38-year-old juror); *People v. Wilmot*, 34 A.D.3d 1225, 1226 (4th Dep't 2006) (same for a 19-year-old juror); *People v. Smalls*, 249 A.D.2d 495, 495 (2d Dep't 1998); *Sanchez v. Roden*, 753 F.3d 279, 306-07 (1st Cir. 2014) ("the Commonwealth had peremptorily challenged every young, black man in the jury pool[,] [but] [b]y contrast, it allowed other individuals who were young, male, and white or who were young and female to sit on [the] jury[,]" making it "logical to conclude (or, put differently, to infer) that the Commonwealth's strikes may have been motivated not by age, but by race"—or race and gender in combination).

16

Because the Court concludes it was indeed error[7] for the trial judge to fail to perform the third step of *Batson* and there is no credibility finding for review, the Court "may determine, *de novo*, whether the peremptory strike of the juror violated [Petitioner's] constitutional rights," by either "hold[ing] a hearing to reconstruct the prosecutor's state of mind at the time of jury selection," or by "grant[ing] the writ contingent on the state granting [Petitioner] a new trial." *Dolphy*, 552 F.3d at 240; *see Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005) (Sotomayor, J.) (within district court's discretion to "permit[] [a] reconstruction hearing and rel[y] upon the testimony offered at that hearing to reconstruct the prosecutor's reasons"); *Jones v. West*, 555 F.3d 90, 102 (2d Cir. 2009) (a district court may also issue a conditional writ directing the state court to either hold a reconstruction hearing or, if such a hearing is not feasible, grant the petitioner a new trial).

In Petitioner's case, a reconstruction hearing should be attempted in the first instance, even though it has been over ten years since he was convicted, given the current absence of a record regarding whether reconstruction is feasible. *See Harris v. Kuhlmann*, 346 F.3d 330, 348 (2d Cir. 2003) (a new trial cannot be ordered until the district court has concluded reconstruction would be infeasible); *Guzman v. Duncan*, 74 F. App'x 76, 77 (2d Cir. 2003) (six-year delay between trial and reconstruction not inordinate); *Jordan v. Lefevre*, 293 F.3d 587, 594 (2d Cir. 2002) (as a matter of law, "passage of nine years [does not] make[] reconstruction of the record infeasible"). The information gathered at that hearing will inform the Court both of its actual feasibility and, potentially, of the credibility of the prosecutor's reason for striking Ms. Jackson.

---

[7] Despite the use of harmless error analysis in a recent *Batson*-related Supreme Court case, *Davis v. Ayala*, 135 S. Ct. 2187 (2015), "a *Batson* error 'is a structural error that is not subject to harmless error review.'" *Galarza v. Keane*, 252 F.3d 630, 638 n.8 (2d Cir. 2001) (citation omitted); *see Carmichael v. Chappius*, 182 F. Supp. 3d 74, 92 (S.D.N.Y. 2016), *vacated on other grounds*, 848 F.3d 536 (2d Cir. 2017) ("*Davis* [*v. Ayala*] was fundamentally a case about the presence of counsel"); *accord Davis v. Ayala*, 135 S. Ct. at 2199 ("we turn to the question whether Ayala was harmed by the trial court's decision to receive the prosecution's explanation for its challenged strikes without the defense present"); *see also Foster v. Chatman*, 136 S. Ct. 1737, 1755 (2016) (no mention of the need to conduct a harmless error analysis when Supreme Court reversed conviction in case where "prosecutors were motivated in substantial part by race when they struck [jurors]" despite petitioner confessing to charged crime).

## CONCLUSION

For the reasons stated above, the Court ADOPTS in part the Report and Recommendation as described above. Resolution of the petition for a writ of habeas corpus is held in abeyance. The parties are ORDERED to consult with each other and submit in writing to the Court on or before September 26, 2017, an agreed-upon date when the reconstruction hearing discussed above can be held, where trial counsel for Petitioner and the prosecutor for the County shall be in attendance to provide testimony. In the alternative, Respondents may provide, in writing, good cause demonstrating the need for additional time to coordinate such a hearing.

While the Court is of the opinion that after entry of a final order in this matter Petitioner will have presented a constitutional claim the resolution of which "reasonable jurists" could find "debatable"—warranting the issuance of a certificate of appealability, *see Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)—a certificate will not issue at this juncture because an appeal of this interim order would be premature in light of the hearing ordered above. *See* 28 U.S.C. § 2253(a). Additionally, the Court certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate all pending motions.

Dated: September 5, 2017  
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge