UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICK RICARDO SMITH,

                          Petitioner,

-against-

BARBARA UNDERWOOD, Attorney General for
the State of New York, and TIMOTHY MCKOY
Administrator of Franklin Correctional Center, North
Carolina,

                          Respondents.

No. 13-CV-8423 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Petitioner Patrick Smith, an inmate at the Franklin Correctional Center, North Carolina, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his custody for a conviction obtained by the State of New York. On September 5, 2017, this Court issued an Opinion adopting certain portions of Magistrate Judge Judith C. McCarthy's Report and Recommendation and setting a reconstruction hearing to address Petitioner's remaining *Batson* claim. During the reconstruction hearing, held on October 23, 2018, Petitioner presented evidence in the form of the testimony of Westchester County Assistant District Attorney Fred Green and documents which were received into evidence on the consent of both parties. The documents included the transcript from the November 2006 jury selection for Petitioner's trial and Mr. Green's handwritten notes from the jury selection process.

    For the reasons set forth below, Petitioner's *Batson* claim is denied.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/7/2018

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case, which was aptly summarized in Judge McCarthy's Report. For the sake of clarity, however, the Court summarizes the developments most relevant to the issue at hand.

Following Petitioner's state convictions, he timely filed the instant petition for a writ of habeas corpus (the "Petition") on November 22, 2013 (ECF No. 1), adopting certain arguments made in his brief to the Appellate Division on direct appeal and arguments contained in his supplemental brief. The Court referred this matter to Magistrate Judge Lisa Margaret Smith to issue a Report and Recommendation on the Petition on January 6, 2014 (Order of Reference, ECF No. 5). This matter was subsequently re-assigned and referred to Magistrate Judge Judith C. McCarthy on May 1, 2014. Judge McCarthy issued her Report and Recommendation (the "Report") on January 9, 2017, recommending this Court deny the Petition (ECF No. 38). Specifically, Judge McCarthy found that most of Petitioner's claims are procedurally barred and that, alternatively, none of his claims present grounds for relief from his conviction. (*Id.*) Petitioner, after requesting and receiving an extension of time from this Court, filed timely objections to the Report on March 30, 2017 (ECF No. 44).

After careful review of the Petition, Judge McCarthy's Report, and Petitioner's objections, this Court issued an Opinion and Order on September 5, 2017, partially adopting Judge McCarthy's Report and denying all but one of Petitioner's claims (ECF No. 45). The Court agreed with Petitioner, however, that the trial court failed to conduct the requisite analysis under the third step of *Batson*—an assessment of the credibility of the prosecution's explanation for peremptorily striking juror Jasmine Jackson. The Court decided to hold resolution of the Petition in abeyance pending a reconstruction hearing to address Petitioner's remaining *Batson*

claim. Respondents subsequently submitted a letter request for reconsideration, arguing that Petitioner's remaining *Batson* claim is unexhausted and procedurally barred, as it was not raised in Petitioner's direct appeal to the Appellate Division. (*See* Resps.' Letter p. 1, ECF No. 48.) On July 30, 2018, the Court issued an Opinion and Order denying the motion for reconsideration and reiterating that a reconstruction hearing should be attempted to resolve the remaining *Batson* claim (ECF No. 55). The *Batson* violation at issue occurred when the prosecution exercised a peremptory challenge to Ms. Jackson, an African-American individual, during the second round of jury selection. Then-Defendant objected to the prosecution's use of the challenge on Ms. Jackson and the court asked the prosecution to respond:

> MR GREEN: . . . . Miss Jackson is a college graduate living at home with her parents who stated in court that the biggest decision that she ever had to make in her life was deciding what college to go to. She, in my opinion, has no substantial enough life experience. She is a young person, she appears to be in her early 20's. She, to me, doesn't have the life experience to make a decision of this weight, despite her statement to the contrary . . . . So for that reason I challenged her because of her age and her lack of life experience.
> . . .
> MR. PORTALE: [Defense counsel]: Judge, just briefly, Although Mr. Green might not—he states his reasons are that Miss Jackson doesn't have life experience. It's her right to serve. She feels that she does have the life experience.
> MR. GREEN: That's not the issue. The issue is not her right to serve, the issue is my belief whether she is a good juror.
> THE COURT: I've heard enough. I'll permit the challenge over defendant's objection.

(Sup. Ct. Jury Selection Tr. 523:15 – 527:15.)

**Reconstruction Hearing**

The reconstruction hearing to address whether the prosecution's neutral explanation of its decision to strike Ms. Jackson was credible, as required under *Batson*, was held on October 23, 2018. The sole witness to testify at the hearing was Mr. Green, a Westchester County Assistant District Attorney who prosecuted Petitioner during his first and second trials. The transcript for

3

the jury selection process and Mr. Green's notes were admitted into evidence and were used to refresh Mr. Green's recollection during his testimony.

When selecting a jury, Mr. Green testified that he looks for fair and impartial people who have the ability to hear different situations and make decisions. (*Id.* 101:16 – 20.) Additionally, Mr. Green highly values jurors who themselves raise concerns about their ability to serve and participate in a sidebar with the attorneys; he considers those individuals to be more invested and more trustworthy than jurors who do not participate in that process. (*Id.* 124:23 – 25, 125:1 – 5.) Mr. Green testified that in the first trial in this case, there was a mistrial because one of the jurors, a young man taking college courses, refused to deliberate with the other jurors and did not believe in DNA or in DNA evidence. (*Id.* 106:3 – 9, 107:4 – 8, 108:10.) Mr. Green concluded that this juror lacked experience which contributed to his irrational position on DNA and, ultimately, the mistrial. (*Id.* 108:19 – 21.) Since that mistrial, Mr. Green is more cautious about the experience levels of prospective jurors. (*Id.* 101:16 – 20, 108:22 – 25.)

According to Mr. Green, and consistent with the voir dire transcript, he challenged Ms. Jackson because of her lack of life experience and perceived inability to make difficult decisions. (Reconstruction Hr'g Tr. 88:8 – 25, 89:1 – 3.) As established by Mr. Green's testimony and confirmed in his contemporaneous notes during voir dire, Mr. Green based his assessment of Ms. Jackson on her biographical details and her responses to his questions. (*Id.* 88:8 – 25, 89:1 – 3, Ex. B-2.) Mr. Green asked Ms. Jackson the following:

> MR GREEN: Can you think of any other situation in your life where you have to make hard decision [sic] of some scale?
> PROSPECTIVE JUROR [Ms. Jackson]: Honestly, I've never had much experience where I had to make a decision. The only experience [sic] with what school I was going to go to.
> MR. GREEN: That's a good one.
> PROSPECTIVE JUROR: But that was it.

> MR. GREEN: Do you—you know, knowing yourself as only you do, do you think that you have the life experience that you could make a tough decision to say that a person was guilty of a crime or not guilty of a crime in a court in the face of 11 other jurors who you're sitting with and talking with about the case?
> PROSPECTIVE JUROR: Yes.

(Sup. Ct. Jury Selection Tr. 507:15 – 508:6.) In his notes about Ms. Jackson, Mr. Green wrote that she lived with her parents and was a recent college graduate. He also wrote "life experience?" and circles the phrase. (Reconstruction Hr'g Tr., Ex. B-2.)

During direct examination, Petitioner challenged Mr. Green on his failure to ask other potential jurors the same questions he posed to Ms. Jackson about her level of experience. Petitioner noted that Mr. Green did not ask other jurors about whether they had ever had to make any difficult life decisions that would make them qualified to sit as a juror. (*Id.* 98:12 – 15.) Mr. Green responded that he did not ask other jurors about this issue because Ms. Jackson was the only individual with such apparent inexperience. (*Id.* 98:16.) Additionally, Mr. Green's testimony throughout the hearing demonstrated that he did question potential jurors about their levels of life experience when they had characteristics that caused him to question their abilities to make consequential decisions. For example, Mr. Green noted that the potential juror Mr. Johnson lived with his parents, similar to Ms. Jackson, and that Mr. Johnson was a project manager at Reuters. (*Id.* 96:16 – 24.) Mr. Green wrote "tough decision Reuters?" above Mr. Johnson's name and testified that this was because he wanted to question Mr. Johnson further about his level of life experience. (*Id.* 135:23 – 25, 136:1 – 6, 16 – 20.) When questioned, Mr. Johnson explained that he has worked on multiple projects in market data systems which convinced Mr. Green that Mr. Johnson "wasn't a novice." (*Id.* 138:18 – 23); (Sup. Ct. Jury Selection Transcript 501:10 – 25.) Additionally, Mr. Johnson approached counsel for a sidebar and disclosed that he had both been a victim of a crime and had a close friend who was the

5

victim of a crime, further convincing Mr. Green that he had the requisite life experience to make important decisions. (Reconstruction Hr'g Tr. 136:22 – 25, 139:18 – 20.) Mr. Green also wrote and circled "tough decisions?" under potential juror Ms. Burton's name and testified that this was because he questioned whether she had enough experience to serve on the jury. (*Id.* 140:3 – 15.) Ms. Burton was ultimately dismissed by the prosecution on a peremptory challenge. (*Id.* 141:13.)

The Court considers this testimony and the exhibits used at the hearing as well as the parties' written submissions (ECF Nos. 59 & 60) below.

## LEGAL STANDARDS

In *Batson v. Kentucky*, the Supreme Court created a three-step burden-shifting analysis for the evidentiary inquiry into whether a party's peremptory challenge is race-based. *Carmichael v. Chappius*, 848 F.3d 536, 545 (2d Cir. 2017); *see generally Batson v. Kentucky*, 476 U.S. 79 (1986). The responsibilities of the parties shift back-and-forth, as described below:

> In the first step, the objecting party must set forth a prima facie showing "that the circumstances give rise to an inference that a member of the venire was struck because of his or her race." [At the second,] [i]f the objecting party makes the requisite showing, "the burden shifts to the [party striking the potential juror] to come forward with a neutral explanation" for its peremptory challenge. Finally, [at the third step,] if the party striking the juror tenders a "neutral explanation," the trial court has "the duty to determine if the [objecting party] has established purposeful discrimination."

*Carmichael*, 848 F.3d at 545 (citations omitted); *see also Galarza v. Keane*, 252 F.3d 630, 636 (2d Cir. 2001). However, the ultimate burden of persuasion rests with the party objecting to the peremptory challenge to show discriminatory intent by the prosecution by a preponderance of the evidence. *See Sorto v. Herbert*, 497 F.3d 163, 170 (2d Cir. 2007).

Here, the dispute is over the third step of *Batson*, whether he Court should credit the prosecution's race neutral explanation for its peremptory challenge of Ms. Jackson. As the Second Circuit has repeatedly held: "[T]he third step of the *Batson* inquiry requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Dolphy v. Mantello*, 552 F.3d 236, 239 (2d Cir. 2009) (quoting *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000)). Tacit acceptance of a race neutral explanation for a strike is insufficient to satisfy the trial court's duty at the third step of *Batson*. *Dolphy*, 552 F.3d at 239. "We have repeatedly emphasized that a trial court may not deny a *Batson* motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes." *Galarza*, 252 F.3d at 636.

A court must consider "all relevant circumstances" in determining whether there has been a *Batson* violation. *Cousin v. Bennett*, 511 F.3d 334, 338 (2d Cir. 2008). These circumstances include the manner in which the prosecutor exercised her peremptory strikes, the patterns of strikes or lines of questioning, and the final racial composition of the jury. *Cousin*, 511 F.3d at 338; *Tankleff v. Senkowski*, 135 F.3d 235, 249 (2d Cir. 1998); *Anderson v. Superintendent, Elmira Correctional Facility*, 360 F. Supp. 2d 477 (S.D.N.Y. 2005).

**DISCUSSION**

The Court has already found that the first two *Batson* elements are satisfied. *Smith v. Schneiderman*, No. 13-CV-8423(NSR), 2017 WL 391706, at *7 (S.D.N.Y. Sept. 5, 2017) However, the trial court did not properly adjudicate whether the objecting party established purposeful discrimination as required under *Batson*'s third prong. *Id*. Thus, this Court must

determine, based on the evidence presented at the reconstruction hearing, whether the prosecutor had legitimate reasons to use a peremptory strike on Ms. Jackson.

I. **Necessity of reconstruction hearing**

As a threshold matter, the Court reiterates that a reconstruction hearing was warranted to determine whether Petitioner established purposeful discrimination by the prosecution and finds that the reconstruction hearing was feasible.

If a state court presented with a *Batson* challenge failed to adequately assess the credibility of the prosecution's nondiscriminatory reasons for striking a juror, the credibility determination is left to the federal habeas judge. *Jordan v. Lefevre*, 293 F.3d 587, 593 (2d Cir. 2002). It is within a district court's discretion to "permit[] [a] reconstruction hearing and rel[y] upon the testimony offered at that hearing to reconstruct the prosecutor's reasons." *Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005). Only if a reconstruction hearing would be infeasible can the court order a new trial. *Harris v. Kuhlmann*, 346 F.3d 330, 348 (2d Cir. 2003). Based on the evidence provided at the reconstruction hearing, the voir dire transcript from the trial court, testimony from Mr. Green, and Mr. Green's personal notes from jury selection, the Court can reasonably assess the credibility of the prosecution's nondiscriminatory reason for striking the juror at issue, Ms. Jackson. Accordingly, the Court finds that the reconstruction hearing was feasible and that there is no need to order a new trial. The Court will rely on the evidence presented at the reconstruction hearing to determine whether Petitioner satisfied his burden under *Batson*.

II. **Analysis**

Petitioner has not established purposeful discrimination by the prosecution or that the Court should not credit the prosecution's race neutral reason for striking Ms. Jackson. The

totality of the facts and circumstances support the prosecutor's credibility.  Mr. Green testified that he had been troubled by jurors with a lack of life experience after his experience with the juror from the previous trial, the young college student, misunderstood DNA evidence and refused to deliberate with his colleagues.  Mr. Green attributed this stance, which he referred to as "not [ ] rational," to the juror's lack of experience.  According to Mr. Green's testimony at the reconstruction hearing, this incident caused him to scrutinize the level of life experience and ability to make difficult decisions of the potential jurors, including Ms. Jackson.  This is confirmed both by Mr. Green's testimony and in his handwritten notes from voir dire.  Courts in the Second Circuit have upheld lack of life experience as a facially race-neutral reason to challenge or strike a juror.  *See Jordan v. Lefevre*, 293 F.3d 587 594 – 95 (2d Cir. 2002); *United States v. Iverson*, 14-CR-197(LJV), 2016 WL 6143195, at *4 (W.D.N.Y. Oct. 21, 2016); *Harris v. Burge*, No. 03-CV-4910(FB), 2004 WL 884437, at *1 (E.D.N.Y. Mar. 25, 2004).  It is Petitioner's burden to establish by a preponderance of the evidence that the prosecutor's nondiscriminatory reason for a strike is not credible, see *Sorto v. Herbert*, 497 F.3d 163, 170 (2d Cir. 2007), and Petitioner has failed to meet that burden.

Petitioner argues that the prosecutor's reason for challenging Ms. Jackson, lack of life experience, is not credible because, first, Mr. Green did not issue peremptory challenges to non-African-American jurors who were similar to Ms. Jackson and because, second, of the small number of African-American jurors in the venire panel.  While these are both factors that the Court should consider in determining the credibility of the prosecution, they do not amount to a preponderance of evidence of purposeful discrimination.

First, Petitioner states that jurors Sarah Waldman and Kenneth Johnson were similar to Ms. Jackson in all but race and, unlike Ms. Jackson, were unchallenged by the prosecutor.  It is

9

true that Ms. Waldman and Mr. Johnson shared some characteristics similar to those of Ms. Jackson; they were single, lived with their parents, and did not have children. However, the evidence presented in the reconstruction hearing indicates that those potential jurors differed from Ms. Jackson in their respective levels of life experience. Unlike Ms. Jackson, who was a recent college graduate with a job as a teaching assistant and with no jury experience, Ms. Waldman had a master's degree and a career as a teacher. She had also previously served on a jury. (Reconstruction Hr'g Tr. 95:7 – 9.) Mr. Green testified that, based on Ms. Waldman's level of experience, he was satisfied that she could make the difficult decisions required of jurors. (*Id.*) Turning to Mr. Johnson, Mr. Green noted that he was a project manager at Reuters but also wrote "tough decision Reuters?" in his notes to remind himself to inquire further about Mr. Johnson's level of experience. (*Id.*, Ex. B-2.) Mr. Green asked Mr. Johnson questions about his responsibilities at Reuters and learned that Mr. Johnson had worked on multiple projects at Reuters which required him to address complex issues. (*Id.* 138:18 – 25, 139: 1 – 8.) Also, Mr. Johnson, unlike Ms. Jackson, approached counsel for a sidebar which is behavior that Mr. Green finds indicative of a trustworthy jury member. (*See id.* 124:23 – 25, 125:1 – 5.) Based on Mr. Johnson's experience at Reuters as well as his two personal experiences with crime Mr. Green decided that Mr. Johnson, like Ms. Waldman, had the experience level required to make difficult decisions. (*Id.* 139:1 – 20.)

Petitioner makes a mountain of the fact that Mr. Green did not ask Ms. Waldman or Mr. Johnson, or any other juror, the same questions he asked Ms. Jackson. This is a mere molehill and is not sufficient to undermine the credibility of Mr. Green. As Mr. Green testified, and as supported by Mr. Green's handwritten notes, when he had concerns about a potential juror's level of experience, he wrote a note to himself and then later questioned that individual to better

10

understand his or her life experience. (Reconstruction Hr'g Tr., 101:1 – 20, 125:6 – 21, Exs. B-1, B-2.) If the individual's answers indicated to Mr. Green that he or she lacked life experience required to make decisions as a juror, he would use a challenge for that person. This was the case for both Ms. Jackson and Kathleen Burton, a non-African-American potential juror. Ms. Burton was not married, had no children, never served on a jury, and worked as a secretary. In Mr. Green's notes below Ms. Burton's name, he wrote "Tough Decisions?" (*Id.*, Ex. B-2.) Mr. Green ended up using one of his peremptory challenges to remove Ms. Burton from the jury panel because, similar to Ms. Jackson, he was concerned she lacked life experiences to make tough decisions. This lends credibility to his statements that his true concern in issuing the challenge was experience level, not race. Although Mr. Green did not ask any potential juror other than Ms. Jackson whether they had ever had to make any difficult decisions like those required of jurors, he testified that this question was crafted to determine her level of life experience which he perceived as being more limited than the rest of the potential jurors. The record, as discussed throughout this Opinion, shows that he asked potential jurors questions, while not identical to those he asked Ms. Jackson, directed at discerning their life experience levels and decision making abilities. (*See id.* 95:7 – 9, 138:18 – 25, 139: 1 – 8.) "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Petitioner, and the record, fails to show that it was more likely than not that the prosecution used its peremptory challenge against Ms. Jackson based on her race rather than her lack of life experience.

Second, the Petitioner argues that the "glaring" discrepancy between the number of prospective African-American jurors and the lack of African Americans who ultimately served on the jury is evidence against the credibility of Mr. Green's reason for striking Ms. Jackson.

(Pet. Letter in Supp. p. 10 ECF No. 59.) The Second Circuit has held that "in appropriate circumstances" numbers alone can be sufficient to establish a prima facie showing for *Batson*. *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002). However, in this case, the parties do not dispute that Petitioner made a prima facie *Batson* claim. The issue is the third inquiry under *Batson*, whether the Court should credit the prosecution's nondiscriminatory reason for issuing a peremptory strike against Ms. Jackson. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). The Court has already held that Petitioner established a prima facie case under *Batson*.[1] *Smith v. Schneiderman*, No. 13-CV-8423(NSR), 2017 WL 3917606, at *5 (S.D.N.Y. Sept. 5, 2017). Petitioner bears the burden of showing by a preponderance of the evidence that the prosecution's purportedly nondiscriminatory reason for the strike is not credible.

Petitioner presents his prima facie case that the strike was discriminatory, but a prima facie case only requires that Petitioner show that the facts and circumstances surrounding the prosecution's exercise of a peremptory challenge raise the inference of discrimination.[2] *Batson*

---

[1] Petitioner correctly indicates that in *Miller-El*, out of a venire panel of 108, twenty individuals were African American and only one of those individuals ultimately served on the jury, because nine were struck for cause and the prosecution peremptorily struck ten. *Miller-El*, 537 U.S. at 331, 342. The Supreme Court held that it would be reasonable to conclude that the prosecution's use of peremptory strikes against African-American prospective jurors was the result of purposeful discrimination. *Id.* at 341 – 42. Petitioner then draws a comparison between *Miller-El* and this case and states that "[h]ere the composition of the venire is even more glaring." (Pet. Letter in Supp. p 10.) However, the issue in *Miller-El* was whether the petitioner established a prima facie case, step one of the *Batson* analysis. The Supreme Court held that the trial court did not "give full consideration" to the evidence supporting a prima facie case of discrimination in holding that the then-defendant failed to show prima facie evidence of discrimination and therefore remanded the case. *Id.* at 329, 348. Here, the Court has already held that Petitioner established a prima facie showing that the peremptory challenge was used for Ms. Jackson based on her race. *Smith v. Schneiderman*, No. 13-CV-8423(NSR), 2017 WL 3917606, at *5 (S.D.N.Y. Sept. 5, 2017). The issue is whether the Court should credit the prosecution's nondiscriminatory reason for the strike.

[2] Specifically, to complete the first step of *Batson* the objecting party must show that (1) she is a member of a protected racial group, (2) the prosecution used peremptory challenges to remove members of the defendant's race

*v. Kentucky*, 476 U.S. 79, 96 (1986). The issue before the Court is whether Petitioner has established that Mr. Green's stated reason for challenging Ms. Jackson's placement on the jury, her lack of life experience, is not credible, by a preponderance of the evidence. *Compare DeVorce v. Philips*, No. 04-CV-6155(KMK)(MDF), 2013 WL 4406008, at *6 (S.D.N.Y. Aug. 7, 2013) (noting that there may be an inference of discrimination when there is a pattern of strikes against a particular race), *with Green v. Travis*, No. 02-CV-6016(JBW), No. 03-MC-0066(JBW), 2003 WL 23198761, at *9 (E.D.N.Y. Dec. 2, 2003), *aff'd*, 414 F.3d 288 (2d Cir. 2005) (holding a reconstruction hearing on the credibility of the prosecutor's race-neutral explanation and concluding that the prosecutor's reason was credible because she appeared to be a credible witness and her notes supported her testimony). Although the statistics of the jury pool are a factor that the Court should and does consider, they are insufficient to show that the Court should not credit Mr. Green's neutral explanation for his strike or that it is more likely than not that Ms. Jackson was challenged based on her race. On the contrary, there is substantial evidence in the record, discussed above, that the prosecution challenged Ms. Jackson for a nondiscriminatory reason, her lack of life experience. Based on Mr. Green's testimony at the reconstruction hearing, which was consistent with both the transcript from the voir dire proceeding and with his personal notes, the Court holds that Mr. Green is a credible witness and that his nondiscriminatory reason for his peremptory challenge is credible. *See Green*, 2003 WL 23198761, at *9.

Accordingly, because the Court finds the prosecution's reason for challenging Ms. Jackson to be credible, Petitioner's *Batson* claim is denied. As all of the other grounds for relief

---

from the venire, and (3) the facts and circumstances give rise to an inference of discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96 (1986).

in the Petition have been dismissed, Petitioner's request for a writ of habeas corpus is also denied.

## CONCLUSION

For these reasons, the Petition for a Writ of Habeas Corpus is DENIED. The Clerk of Court is directed to terminate the action.

Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483 – 84 (2000).

Dated: December 7, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge